IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 2 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ST. PAUL REINSURANCE, LTD. | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CAUSE NO. __B-04-051__ |
| | § | |
| BELLAGIO BUILDERS, INC. | § | |
| and CASTLE HOMES | § | |
| | § | |
| Defendants | § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff, St. Paul Reinsurance Company, Ltd. files this its complaint pursuant to 28 UNITED STATES CODE § 2201 and Rule 57, FEDERAL RULES OF CIVIL PROCEDURE, for a declaration of the rights of Defendant under Policy Number MNB3327015427.

### Jurisdiction

1.      Jurisdiction is conferred upon this Court by 28 U.S.C. §1332(a)(2) relating to civil actions between citizens of a State and citizens or subjects of a foreign state.

2.      The matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000).

### Venue

3.      Venue is proper under 28 U.S.C. §1391(a)(2) as the events occurred within the Southern District of Texas, Brownsville Division.

61426
6815-11615

## Parties

4.    Plaintiff St. Paul Reinsurance Company, Ltd. is a nonresident eligible surplus lines underwriter with its principal place of business in London, England.

5.    Defendant Bellagio Builders, Inc. is a Texas corporation located at 3009 North Augusta National Drive, Houston, Texas 78550 and may be served with process by serving its registered agent Bettye Bowman at 1313 Steward Place Road, Suite 101, Harlingen, Texas 78552, or wherever she may be found.

6.    Defendant Castle Homes, Inc., was a Texas Corporation located at 3009 North Augusta National Drive, Houston, Texas 78550 and may be served with process by serving its registered agent Bettye Bowman at 1313 Steward Place Road, Suite 101, Harlingen, Texas 78552, or wherever she may be found.

## Factual Background

7.    Defendants Bellagio Builders, Inc. (hereinafter referred to as "Bellagio") and Castle Homes, Inc. (hereinafter referred to as "Castle Homes") are the named insured under Policy Number MNB3327015427 issued by Plaintiff St. Paul Reinsurance Company, Ltd. (hereinafter "St. Paul Re").    Attached hereto and made a part hereof as Exhibit "A" is Policy No. MNB3327015427. The policy had effective dates of June 1, 2001 to June 1, 2002.

8.    Bellagio and/or Castle Homes constructed a residence for Leo Araguz at 2929 N. Augusta National in Harlingen, Texas.  The owner of this residence, Leo Araguz, complained of problems arising from the construction of the residence.

9.    It is unclear which entity, Bellagio or Castle Homes, actually constructed the house.

10.    Araguz filed suit against Bellagio Builders, Inc. in Cause No. 2002-12-005169-E; in

the 357th Judicial District Court of Cameron County, Texas styled *Leo Araguz  v. Bellagio Builders, Inc.* and attached hereto and made a part hereof as Exhibit "B."

11.     St. Paul Re thereafter agreed to defend Bellagio and Castle Homes in the underlying lawsuit, subject to St. Paul Re's Reservation of Rights, a true and correct copy of which is attached hereto as Exhibit "C."

## Relief Requested

12.     St. Paul Re respectfully requests that this Court construe the policy of insurance, Exhibits "A" hereto, and declare that St. Paul Re does not have a duty to defend or indemnify Defendant Bellagio Builders, Inc. or Castle Homes, Inc. for the claims brought by Araguz.

## Declaratory Judgment

13.     Policy No. MNB3327015427 provides coverage for damage arising out of an occurrence:

> This insurance applies to "bodily injury" and "property damage" only if:
>
> (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

The Policy defines "occurrence" as:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Claims of breach of contract, fraud, breach of warranty, attorney fees and DTPA violations are not accidents and therefore there is no coverage for such claim.

15.     The Policy contains a "j" exclusion which excludes coverage in certain circumstances.

**2.    Exclusions**

**This insurance does not apply to:**

**j.    Damage to Property**

"Property damage" to:

(1)    Property you own, rent or occupy;

(2)    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3)    Property loaned to you;

(4)    Personal property in the care, custody or control of the insured;

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.

16.    The policy contains an "l" exclusion which excludes coverage in certain circumstances.

Exclusion 2.l., "Damage to Your Work", states the following:

"Property damage" to "your work" arising out of it or any part of it and included in the "Products-Completed Operations Hazard."

"This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

17.    The Intentional Acts Exclusion of Policy No. RSIA09588 precludes coverage for any intentional acts by Bellagio. The Policy excludes:

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

18.　　As set forth herein, St. Paul Re has no duty to defend or indemnify Bellagio and/or Castle Homes for the damages that occurred.

### Request for Attorney's Fees

19.　　St. Paul Re also respectfully request that this Court award attorney's fees to St. Paul Re.　Texas law allows the recovery of attorney's fees by the prevailing party in a declaratory judgment action.　28 U.S.C. § 2201; *Acceptance Ins. Co. v. Bhugra Enterprises, Inc.*, 946 F. Supp. 480, 483 (N.D. Tex. 1996).

### Prayer

Plaintiff St. Paul Reinsurance Company, Ltd. respectfully prays that this Court enter a declaratory judgment which finds that St. Paul Reinsurance Company, Ltd. does not have any duty to defend or indemnify Bellagio Builders, Inc. or Castle Homes, Inc. under Certificate of Insurance MNB3327015427 for the claims asserted by Leo Araguz in the underlying suit, and award attorney's fees to St. Paul Reinsurance Company, Ltd., and for such other or further relief, general or special, at law or in equity, to which St. Paul Reinsurance Company, Ltd. may be justly entitled.

Respectfully submitted,

Ronald E. Tigner
State Bar No. 20028000
Federal Bar No. 3095
2000 Bering Drive, Suite 600
Houston, Texas 77057
(713) 355-6062
(713) 572-9129 FAX

**Attorney for Plaintiff St. Paul
Reinsurance Company, Ltd.**

OF COUNSEL:

PREIS, KRAFT & ROY
2000 Bering, Suite 600
Houston, Texas 77027
(713) 355-6062
(713) 572-9129 FACSIMILE

61426
6815-11615

COMMERCIAL
LINES
POLICY

ST PAUL REINSURANCE CO LTD
LONDON, ENGLAND EC3N 2PJ

## COMMON POLICY DECLARATIONS

Policy Number: MNB3327015427                Renewal of: MNB3327001946

Named Insured: CASTLE HOME BUILDERS INC
               & BELLAGIO BUILDERS INC

Mailing Address:
               3009 N AUGUSTA NATIONAL
               HARLINGEN, TEXAS 78550

Policy Period: From 06/01/01    to 06/01/02    at 12:01 A.M. Standard Time at
               your mailing address shown above.

Business Description: NEW HOME BUILDER          Form of Business: Corporation

In return for the payment of the premium, and subject to all the terms of this
policy, We agree to provide the insurance as stated in this policy.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS
INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| COVERAGE PART | PREMIUM |
|---|---|
| Commercial Property Coverage Part | $ |
| Commercial General Liability Coverage Part | $ 2655 |
| Commercial Crime Coverage Part | $ |
| Commercial Inland Marine Coverage Part | $ |
| Professional Liability Coverage Part | $ |
| Other Liability Coverage Part | $ |

| Total Premium | Policy Fee | State Tax | Stamping Fee | Total |
|---|---|---|---|---|
| $ 2655.00 | $100.00 | $ 133.62 | $ 6.89 | $ 2895.51 |

Minimum Earned Premium: 25%

Form(s) and Endorsement(s) made a part of this policy at time of issue*:
     JACKET,IL0017(11/85),IL0021(11/85),MHI18(12/96),
     MHI26L(10/99),MHI43(05/92),MHI29(05/92)
*Omits applicable Forms and Endorsements if shown in specific Coverage
Part/Coverage Form Declarations.

Servicing Agent
TEXAS INSURANCE MANAGERS
PO DRAWER 531728
HARLINGEN TX 78553-1728

This Policy shall not be valid
unless signed by McClelland and Hine, Inc

Agent#:   187

McClelland and Hine, Inc.
06/14/01  San Antonio

THIS PAGE ALONE DOES NOT PROVIDE COVERAGE AND MUST BE ATTACHED TO A COMMERCIAL
LINES COMMON POLICY DECLARATIONS PAGE, COMMON POLICY CONDITIONS, COVERAGE PART
COVERAGE FORMS AND ANY OTHER APPLICABLE FORMS AND ENDORSEMENTS.



**EXHIBIT
A**

GU 267
(11-85)

IL 00 17 11 85

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A.  CANCELLATION**

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

  a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

  b.  30 days before the effective date of cancellation if we cancel for any other reason.

3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.  CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C.  EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time

during the policy period and up to three years afterward.

**D.  INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:

1.  Make inspections and surveys at any time;

2.  Give you reports on the conditions we find; and

3.  Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1.  Are safe or healthful; or

2.  Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E.  PREMIUMS**

The first Named Insured shown in the Declarations:

1.  Is responsible for the payment of all premiums; and

2.  Will be the payee for any return premiums we pay.

**F.  TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the cause of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having property temporary custody of your property will have your rights and duties but only with respect to that property.

GU 267 (11-85)
IL 00 17 11 85        Copyright, Insurance Services Office, Inc., 1985

GU 276a
(11-85)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

IL 00 21 11 85

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY
NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

A. Under any Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an "Insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "Insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "Insured"; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions of Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material," "Special nuclear material" or "by-product material";

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of

uranium or thorium from any ore processed primarily for its "source material" content and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a)    Any "nuclear reactor";

(b)    Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel" or (3) handling, processing or packaging "waste";

(c)    Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "Insured" at the premises where such equipment or device is located consists of or

contains more than 25 grams of plutonium or uranium 233 or any combination thereof or more than 250 grams of uranium 235;

(d)    Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fission-able material;

"Property damage" includes all forms of radioactive contamination of property.

## MINIMUM EARNED ENDORSEMENT

It is hereby understood and agreed that the minimum earned premium shall be _____ **25%** _____
of the annual premium unless the policy is cancelled by the Company for underwriting reasons in
which case the premium shall be pro-rata of the annual premium.

Policy Number _____
Named Insured _____
Effective Date _____

**MHI-18(12/96)**

**LONDON COMPANIES**

## GENERAL CERTIFICATE PROVISIONS

1. It is understood and agreed by the Insured by accepting this Certificate that McClelland and Hine, Inc. is not the Company and neither is nor shall be in any way or to any extent liable for any loss or claim whatsoever, as an Insurer.

2. If the Insured shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise, this Certificate shall become void and all claims shall be forfeited.

3. This insurance is made and accepted subject to all provisions, conditions, and warranties set forth herein and in any forms or endorsements attached hereto, all of which are to be considered as incorporated herein, and any provisions or conditions appearing in any form or endorsements attached hereto which alter the Certificate provisions stated above shall supersede such Certificate provisions insofar as they are inconsistent therewith.

4. This Certificate of insurance may be cancelled on the customary, short rate basis by the Insured at any time by written notice or by the surrender of this Certificate to McClelland and Hine, Inc. This Certificate of insurance may also be cancelled by the Company or Underwriters or by McClelland and Hine, Inc. on their behalf (with or without the return or tender of the unearned premium), by delivering to the Insured or by mailing to the Insured by registered or unregistered mail at the Insured's address as shown herein, not less than 10 days written notice, stating when the cancellation shall be effective, and in such case the Company or Underwriters shall refund the paid premium less the earned portion thereon on demand.

5. It is agreed that in the event of the failure of the Company or Underwriters hereon to pay any amount claimed to be due hereunder, the Company or Underwriters hereon, at the request of the Insured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Company's or Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or any State in the United States. It is further agreed that service of process in such suit may be made upon

> Brackett and Ellis, A Professional Corporation,
> 100 Main Street, Fort Worth, Texas 76102-3090

that in any suit instituted against any one of them upon this contract. Company or Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Company or Underwriters in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that they will enter a general appearance upon Company's or Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, Company or Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

6. Loss, if any, to be payable in United States Currency.

7. The Insured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate advice thereof to the Company or Underwriters through McClelland and Hine, Inc. at the address shown on this Certificate.

MH-26-L(10/99)

## IMPORTANT NOTICE

To obtain information or to make a complaint:

You may call ____NOT REQUIRED_____
toll-free telephone number for information or to make a
complaint at:

### NOT REQUIRED

You may contact the Texas Department of Insurance to
obtain information on companies, coverages, rights or
complaints at:

### 1-800-252-3439

You may write the Texas Department of Insurance:

    P.O. Box 149104
    Austin, Texas 78714-9104
    Fax # (512) 475-1771

### PREMIUM OR CLAIM DISPUTES

Should you have a dispute concerning your premium or
about a claim you should contact the agent or company
first. If the dispute is not resolved, you may contact the
Texas Department of Insurance.

### ATTACH THIS NOTICE TO YOUR POLICY

This notice is for information only and does not become
a part or condition of the attached document.

**MHI-43 (05/92)**

---

## AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis de
____NO SE REQUIERE____ para informacion o para
someter una queja al:

### NO SE REQUIERE

Puede communicarse con el Departamento de
Seguros de Texas para obtener informacion
acerca de companias, coberturas, derechos o quejas
al:

### 1-800-252-3439

Puede escribir al Departamento Seguros de Texas:

    P.O. Box 149104
    Austin, Texas 78714-9104
    Fax # (512) 475-1771

### DISPUTAS SOBRE PRIMAS O RECLAMOS

Si tiene una disputa concerniente a su prima o a un
reclamo, debe communicarse con el agente o la
compania primero. Si no se resuelve la disputa,
puede entonces communicarse con el
departamento Texas Department of Insurance.

### UNA ESTE AVISO A SU POLIZA

Este aviso es solo para proposito de informacion
y no se convierte en parte o condicion del
documento adjunto.

## SURPLUS LINES INSURANCE NOTICE

"This Insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Texas insurance statutes. The State Board of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and this insurer is not a member of the property and casualty insurance guaranty association created under Article 21.28-C, Insurance Code. Article 1.14-2, Insurance Code, requires payment of 4.85 percent of tax on gross premium."

MHI-29 (05/92)

COMMERCIAL GENERAL LIABILITY COVERAGE PART
DECLARATIONS

Policy Number: MNB3327015427                    Effective Date: 06/01/01                **

**LIMITS OF INSURANCE**

| | |
|---|---|
| General Aggregate Limit(Other than Products-Completed Operations) | $1,000,000 |
| Products-Completed Operations Limit | $1,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Personal and Advertising Injury Limit | $1,000,000 |
| Fire Damage Limit | $   50,000  Any One Fire |
| Medical Expense Limit | $    5,000  Any One Person |

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES**
Form of Business*:

Business Description*:

Location of All Premises You Own, Rent, or Occupy:
             3009 N AUGUSTA NATIONAL
             HARLINGEN, CAMERON, TX

**PREMIUM:$ 2655**

| Classification | Code # | Premium Basis | Rate Pr/Co | All Other | Advance Pr/Co | Premium All Other |
|---|---|---|---|---|---|---|
| CONTRACTORS EXECUTIVE SUPERVI- SORS OR EXECUTIVE SUPERINTEN- DENTS-INCL PROD &/OR COMP OPS | 91580 | p 15000 | INCL | 72.873 | 0 | 1093 |
| PAINTING-EXTERIOR-BUILDINGS OR STRUCTURES-THREE STORIES OR LESS IN HEIGHT-NOC | 98304 | p 6000 | 5.388 | 57.110 | 32 | 343 |
| CONTRACTORS-SUBCONTRACTED WORK IN CONNECTION WITH BUILDING CONSTRUCTION, RECONSTRUCTION, REPAIR OR ERECTION-ONE OR TWO FAMILY DWELLINGS | 91583 | c 50000 | 5.565 | 0.647 | 278 | 32 |
| CARPENTRY-CONSTRUCTION OF RESI DENTIAL PROPERTY NOT EXCEEDING THREE STORIES IN HEIGHT | 91340 | p 7100 | 15.386 | 38.779 | 109 | 275 |
| Total Advance Premium | | | | | 454 | 2201 |

(s)gross sales-per$1000  (c)total cost-per$1000  (m)admissions-per 1000  (e)each
(p)payroll-per $1000   (a)area-per 1000 sq ft  (u)units   (g)gallons per 1000
**POLICY MAY BE AUDITABLE**
FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)
Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:
CG0001(10/93),CG0300(10/93),MHI102(10/99),CG2160(04/98),
MHI100(10/99),CG2139,CG2116,MHI63,MHI109

*Information omitted if shown elsewhere in the policy.        **Inclusion of date optional.

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED
AND THE POLICY PERIOD.

COMMERCIAL GENERAL LIABILITY COVERAGE PART
SUPPLEMENTAL DECLARATIONS

Policy Number: MNB3327015427                Effective Date: 06/01/01            **

Location of All Premises You Own, Rent, or Occupy:
            3009 N AUGUSTA NATIONAL
            HARLINGEN, CAMERON, TX

| Classification | Code # | Premium Basis | Rate Pr/Co | Rate All Other | Advance Pr/Co | Premium All Other |
|---|---|---|---|---|---|---|
| MASONRY | 97447 | p 14000 | 0.000 | 25.194 | 0 | 353 |
| TILE, STONE, MARBLE, MOSAIC OR TERRAZZO WORK - INTERIOR CONSTRUCTION | 99746 | p 5000 | 6.910 | 20.999 | 35 | 105 |

(s)gross sales-per$1000  (c)total cost-per$1000  (m)admissions-per 1000  (e)each
(p)payroll-per $1000      (a)area-per 1000 sq ft  (u)units  (g)gallons-per 1000

This page alone does not provide coverage and must be attached to a Commercial Lines Common
Policy Declarations Page, Common Policy Conditions, Coverage Part Coverage Form(s) and any
other applicable forms and endorsements.

CG 00 01 10 93

CL 157
(10-93)

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (Section II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (Section V).

## SECTION I—COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement.**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

     **(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (Section III); and

     **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

     **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

     **(2)** The "bodily injury" or "property damage" occurs during the policy period.

   **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**2. Exclusions.**

   This insurance does not apply to:

   **a. Expected or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect

persons or property.

   **b. Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

     **(1)** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

     **(2)** That the insured would have in the absence of the contract or agreement.

   **c. Liquor Liability**

   "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

     **(1)** Causing or contributing to the intoxication of any person;

     **(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

     **(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

   **d. Workers' Compensation and Similar Laws**

   Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

   **e. Employer's Liability**

   "Bodily injury" to:

     **(1)** An "employee" of the insured arising out of and in the course of:

       **(a)** Employment by the insured; or

       **(b)** Performing duties related to the conduct of the insured's business; or

     **(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of para-

Copyright, Insurance Services Office, Inc., 1982

graph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

   (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

   (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

   (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

      (i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

      (ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment."

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage to Property**

Copyright, Insurance Services Office, Inc., 1992

CL 167 (10-93)
CG 00 01 10 93

"Property damage" to:

(1) Property you own, rent or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

k.  Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

l.  Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.  Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use,

withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1.  Insuring Agreement.

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENT—COVERAGES A AND B.

b.  This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

2.  Exclusions.

This insurance does not apply to:

a.  "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

## COVERAGE C. MEDICAL PAYMENTS

1. Insuring Agreement.

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. Exclusions.

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of

any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard."

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS — COVERAGES A AND B

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the insured in the "suit."

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II — WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

c. An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with

Copyright, Insurance Services Office, Inc., 1982

CL 167 (10-82)

CG 00 01 10 93

respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees," other than your "executive officers," but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

(1) "Bodily injury" or "personal injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees" or, if you are a partnership or joint venture, by any partner or member.

b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the

equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III—LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any

one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands,

notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us.**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance.**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

   a. **Primary Insurance**

   This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

   b. **Excess Insurance**

   This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

      (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

      (2) That is Fire Insurance for premises rented to you; or

      (3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of

Copyright, Insurance Services Office, Inc., 1992

Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

   (a) Goods or products made or sold by you in the territory described in a. above; or

   (b) the activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

10. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

Copyright, Insurance Services Office, Inc., 1992

CL 167 (10-93)
CG 00 01 10 93

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. a. "Products-completed-operations-hazard": includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

17. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

18. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability or performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1992

POLICY NUMBER:    MNB3327015427

**COMMERCIAL GENERAL LIABILITY**
CG 03 00 10 93

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deductible PER CLAIM or PER OCCURRENCE | |
|---|---|---|
| Bodily Injury Liability | $ XXXXXX | $ XXXXXXXXXX |
| OR | | |
| Property Damage Liability | $ 500.00 | $ XXXXXXXXXX |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ XXXXXXXX | $ XXXXXXXXXX |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):-

1. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

2. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

   a. PER CLAIM BASIS. If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   (1) Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   (2) Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

   (3) Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

   (a) "Bodily injury";

   (b) "Property damage"; or

   (c) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence".

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

   With respect to "property damage", person includes an organization.

CG 03 00 10 93                    Copyright, Insurance Services Office, Inc., 1992                    Page 1 of 2    □

**b. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

(1) Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

(2) Under Property Damage Liability Coverage, to all damages because of "property damage"; or

(3) Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

(a) "Bodily injury";

(b) "Property damage"; or

(c) "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

3. The terms of this insurance, including those with respect to:

(a) Our right and duty to defend any "suits" seeking those damages; and

(b) Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

          Copyright, Insurance Services Office, Inc., 1992          CG 03 00 10 93

# ARTISAN'S COMBINATION ENDORSEMENT

## ASBESTOS EXCLUSION

This insurance does not apply to and no duty to defend is provided by us for "bodily injury," "personal injury," "advertising injury" or "property damage" or any loss, cost or expense arising out of:

1. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

2. The use of asbestos in constructing or manufacturing any good, product or structure; or

3. The removal of asbestos from any good, product or structure; or

4. The manufacture, transportation, storage, service, installation, use, sales, mining, distribution, or disposal of asbestos or goods or products containing asbestos.

## ABSOLUTE POLLUTION EXCLUSION

It is agreed that any exclusion relating to the discharge, dispersal, release or escape of smoke, vapors, soot fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contamination or pollutants is deleted and replaced by the following:

This Certificate does not apply:

1. To bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

   a. at or from premises owned, rented or occupied by the named insured;

   b. at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste;

   c. which are at any time transported, handled, stored, treated, disposed of or processed as waste by or for the Named Insured or any person or organization for whom the Named Insured may be legally responsible; or

   d. at or from any site or location on which the named insured or any contractors or subcontractors working directly or indirectly on behalf of the Named Insured are performing operations:

      (1) if the pollutants are brought on or to the site or location with such operations, or

      (2) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

2. To any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

MHI-102(10/99)

## ATHLETIC OR SPORTS PARTICIPANTS EXCLUSION

This insurance does not apply to "bodily injury" to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

## EMPLOYMENT RELATED PRACTICES EXCLUSION

This insurance does not apply to and no duty to defend is provided by us for claims, "suits," accusations or charges or any loss, cost or expense for "bodily injury," "personal injury" or "property damage" arising out of any:

1. Refusal to employ;

2. Termination of employment;

3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other employment related practices, policies, acts or omissions; or

4. Consequential "bodily injury," "property damage," "personal injury" as a result of 1 through 3. This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

## CLASSIFICATION NOT SCHEDULED EXCLUSION

This insurance does not apply to and no duty to defend is provided for "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any classification(s) which is (are) not scheduled in the Commercial General Liability Coverage Part Declarations and for which you have not paid a premium.

## LEAD CONTAMINATION EXCLUSION

This endorsement excludes occurrences in the insured premises which result in:

1. "Bodily Injury" arising out of the ingestion, inhalation or absorption of lead in any form;

2. "Property damage" arising from any form of lead;

3. "Personal injury" arising from any form of lead;

4. "Advertising injury" arising from any form of lead;

5. "Medical Payments" arising from any form of lead;

6. Any loss, cost or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, removing, cleaning up, monitoring, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

COMMERCIAL GENERAL LIABILITY
CG 21 60 09 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" (or "personal and advertising injury" if defined as such in your policy) arising directly or indirectly out of:

**a.** Any actual or alleged failure, malfunction or inadequacy of:

   **(1)** Any of the following, whether belonging to any insured or to others:

      **(a)** Computer hardware, including microprocessors;

      **(b)** Computer application software;

      **(c)** Computer operating systems and related software;

      **(d)** Computer networks;

      **(e)** Microprocessors (computer chips) not part of any computer system; or

      **(f)** Any other computerized or electronic equipment or components; or

   **(2)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph 2.a.(1) of this endorsement.

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

**b.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph 2.a. of this endorsement.

Copyright, Insurance Services Office, Inc., 1998

# MEDICAL PAYMENT ENDORSEMENT

This Endorsement, effective            , Forms a part of

Policy No.: MNB3327015427   Issued To:

By:

## THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

Coverage C. MEDICAL PAYMENTS

SCHEDULE

Limits of Liability

$5,000.  Any One Person
$10,000   Any One Occurrence

MHI-100(10/01/99)

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART
### PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "Insured contract" in the DEFINITIONS Section is replaced by the following:

"Insured contract" means:

a.    A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "Insured contract";

b.    A sidetrack agreement;

c.    Any easement or license agreement, except in connection with construction or demolishtion operations on or within 60 feet of a railroad;

d.    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e.    An elevator maintenance agreement.

CG 21 39 10 1993                    Copyright, Insurance Services Office, Inc., 1992

POLICY NUMBER:   MNB3327015427                    COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

SCHEDULE

**Description of Professional Services:**

1. NEW HOME BUILDER

2.

3.

If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule, this insurance does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" due to the rendering or failure to render any professional service.

## PREMIUM AUDIT CONDITION

This endorsement modifies insurance under the following:
### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Paragraph 5. of *COMMERCIAL GENERAL LIABILITY CONDITIONS* (Section IV) is replaced by the following:

5.    Premium Audit.

    a.    We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    b.    You must obtain Certificates of Insurance, certifying Commercial General Liability with limits of liability and coverage equal to or greater than that provided by this policy, from all subcontractors prior to commencement of any work performed by them for or in your behalf. If you do not obtain Certificates of Insurance as stipulated then such Subcontractors will be deemed to be uninsured for Commercial General Liability Insurance and their costs to you will be deemed as payroll on audit of your records and you will be charged accordingly as if they were your employees.

    c.    Premium shown in this Coverage Part Declarations as advance premium is a minimum and deposit premium. It shall be determined based upon an estimate of exposures for the current policy period. 100% (one hundred percent) of this advance premium shall be payable at policy inception.

    d.    At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured.

        (1)    We may either ask to audit your records at the location of your premises, or those of your accountant, or ask you to send us copies of your records. We will compute the actual earned premium based upon this audit. This premium is due and payable in full on notice to the first Named Insured.

        (2)    If the total earned premium for the policy period is less than the Total Advance Premium, then the advance premium is the minimum premium and is not subject to further adjustment.

    e.    The first Named Insured must keep records of the information we need for premium computation and permit us to audit these records or, at our option, send us copies at such times as we may request.

    f.    Should you not cooperate with the terms of this condition or fail to pay premiums when due we will cancel the policy for failure to comply with the terms of the policy or non-payment of premium in accordance with A. CANCELLATION condition of the Common Policy Conditions. The premium that you paid at inception will be applied against the total earned premium as of the cancellation date. Any refund will be less than prorata. The Cancellation will be effective even if we have not made or offered a refund.

MHI-63(06/99)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MOLD EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL UMBRELLA
COMMERCIAL EXCESS

This insurance does not apply to:

1. Any sums that the insured becomes obligated to pay as damages and the Company shall have no duty to defend any claim or "suit" against the insured seeking damages because of "bodily injury," "property damage," "personal injury," or "advertising injury" which would not have occurred in whole or in part but for the existence of or actual, alleged or threatened, discharge, dispersal, seepage, migration, release or escape of any mold, mildew or fungus, or any materials containing them, at any time.

2. Any loss, cost or expense arising out of any:

   a) Request, demand, order or statutory or regulatory requirement that any insured or any other person or organization test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any mold, mildew or fungus, or any materials containing them; or

   b) Claim or suit by or on behalf of a governmental authority or any other person or organization for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, any mold, mildew, or fungus, or any materials containing them.

**MHI-109 (07/01)**

NEP

CAUSE NO. 2002-12-5169-E

| | | |
|---|---|---|
| LEO ARAGUZ | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 357TH JUDICIAL DISTRICT |
| | § | |
| BELLAGIO BUILDERS INC. | § | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiff, LEO ARAGUZ, complaining of BELLAGIO BUILDERS

INC. and for cause of action would show the Court as follows:

FILED ___ O'CLOCK ___ M
AURORA DE LA GARZA DIST. CLERK

AUG 1 2 2003

DISTRICT C... Elvia Serrata ... TY, TEXAS
DEPUTY

### I.

#### Discovery Level

Discovery in this litigation is intended to be conducted under Level 3. TEX. R. CIV. P.

190.4.

### II.

#### Parties

Plaintiff LEO ARAGUZ is an individual residing in Cameron County, Texas.

BELLAGIO BUILDERS INC., Inc. (hereinafter "BELLAGIO") is a corporation duly

licensed to conduct business in the State of Texas and has been served.

### III.

#### Jurisdiction and Venue

This Court has jurisdiction over this lawsuit in that Plaintiff is a resident of Cameron

County and the events made the basis of this suit occurred in substantial part or in whole in

Cameron County, Texas, and concerns real property located in Harlingen, Cameron County,

Texas. This Court has jurisdiction over this cause in that the damages suffered by the Plaintiff

EXHIBIT
B

d1200 0011

are in an amount in excess of the minimum jurisdictional limits of this Court, and liability is established herein pursuant to the laws of the State of Texas.

## IV.

### Conditions Precedent

All conditions precedent to the maintenance of this cause of action have been performed.

## V.

### Causes of Action

This is a suit for damages arising out of breach of contract/warranty, negligence, fraud, unconscionable conduct, and violations of the Texas Deceptive Trade Practices Act.

## VI.

### Factual Background

In October 16, 2002, Plaintiff entered into a contract with Bellagio Builders Inc. for construction of his home pursuant to plans and specifications prepared by their architects. Defendant's' charge for design and construction of Plaintiff's' residence was approximately $220,000.00. Plaintiff's' residence, known as 2929 N. AUGUSTA NATIONAL, was negligently or grossly negligently designed and constructed. As of the filing of their Original Petition, Plaintiff has discovered numerous defects in the workmanship of his residence and has expended substantial monies to effect repairs after providing notice to Defendant.

Bellagio represented that they could meet Plaintiff's expectations and build his home according to Plaintiff's wishes. Based upon their representations, Plaintiff selected Bellagio as their builder/contractor.

Various defects are now apparent in the house. Bellagio was apprized of problems

regarding some of the defects which had manifested themselves since their completion of the project. But Bellagio failed to remedy the defects of which they were advised and additionally requested to be paid work they originally had promised to construct in a good and workmanlike manner.

The defects discovered by Plaintiff were hidden defects which have resulted in significant damages to his home. Plaintiff obtained estimates from contractors, as well as paid for some repairs to be performed on his home.

The main defect in the home is the condition of the foundation. It has failed to properly support the home and has become a dangerous condition in addition to causing unsightly cracks on the floors, walls, and ceilings. It has also cracked and popped up the tile floor and caused wide gaps between the floors and the walls. It has moved so much that the doors and windows do not work properly and windows have cracked. It has caused water leakage into the home and resultant problems with dampness and mold. The condition has caused such problems in the house that the house is uninhabitable.

Bellagio is liable to Plaintiff and the Plaintiff is entitled to recover damages resulting from these construction defects. Bellagio's acts and/or omissions also constitute violations of the Texas Deceptive Trade Practices Act, negligence, breach of contract/warranty, and fraud.

## VII.

## Negligence

Plaintiff hereby incorporate by reference paragraph VI.

Defendant had, at all relevant times, a duty to safely and adequately construct a home that is habitable, and not to expose its residents to damages, to select proper and safe methods of construction, to test and determine soil conditions and to install the foundation of the home

properly, to adequately supervise and construct the home to ensure a result that was good and workmanlike, to adequately supervise construction to ensure adherence with applicable building codes and industry standards, to construct the home in accordance with the plans and specifications, all of which they failed to do and which failure has led to the subsequent damages of the Plaintiff.

The damages have spread throughout the house including, but not limited to hallways, bedrooms, bathrooms, and the plumbing, electrical, and HVAC systems.

Defendant Bellagio was negligent in failing to properly construct Plaintiffs' residence and was negligent in the design and supervision of the construction of the Plaintiff's home. Defendant violated the duty owed to Plaintiff to exercise the ordinary care and diligence exercised by other residential construction contractors and designers/builders in the same or similar circumstances.

Each and every one of the foregoing acts and omissions, taken separately or collectively, constitutes a direct and proximate cause of the injuries and damages set forth below. Defendant breached its duty of care and was negligent in at least the following:

1.    Failing to take reasonable and necessary steps to properly construct and supervise design, select, inspect, install, maintain, monitor, repair and prevent the conditions that allowed the damage to the Plaintiff's residence.

2.    Failing to properly design, install and inspect the foundation and the foundation system.

3.    Failing to exercise reasonable care in the selection of the type of foundation system to be used for the plaintiff's residence.

4.    Failing to detect and/or address the spread of damage throughout the Plaintiff's

residence in a timely manner.

5.  Failing to properly hire, train, and/or educate its employees, suppliers, and/or independent contractors in a proper manner to construct Plaintiff's residence.

6.  Failing to comply with Texas State laws, regulations and statutes governing their conduct.

7.  Failing in their respective capacities to properly select and inspect materials and equipment now present in Plaintiff's home.

The above described conduct of the Defendant's constitutes negligence and gross negligence because Defendant failed to exercise ordinary care in selection, installation, supervision, monitoring and inspection of the foundation. Such conduct by the Defendant was a proximate cause of the actual damages suffered by the Plaintiff.

VIII.

Breach of Contract

Plaintiff entered into a contract with Defendant Bellagio wherein Bellagio agreed to serve as the builder in the construction of the Plaintiff's' residence located at 2929 N. Agusta National, Harlingen, Cameron County, Texas. Plaintiff paid approximately S 220,000.00 towards the construction of his home and Defendant undertook the obligation to perform the design and construction of the home in a good and workmanlike manner and in full compliance with both the terms of the contract and Texas law.

Defendant received substantial compensation to oversee and inspect the construction of Plaintiff's' home from start to finish. However, Defendant failed to adequately ensure that the construction of the home complied with applicable building codes and industry standards, and failed to ensure that the work was performed properly and in a good and

workmanlike manner.

As a direct and proximate result of Defendant's breach of contract, Plaintiff has incurred actual and consequential damages.

Plaintiff herein re-allege each and every fact and allegation set forth above, and say that if any subcontractors were a proximate cause of Plaintiff's' damages, then Defendant Bellagio is responsible for their negligence.

All conditions precedent to the contracts have been performed or have occurred.

## IX.

## Deceptive Trade Practices Act

Plaintiff hereby incorporate by reference paragraphs VI through VIII.

At the time of the transaction described above, Defendant represented that the design and construction of the residence known as 2929 N. Augusta National, Harlingen, Cameron County, Texas 78550, was constructed in a good and workmanlike manner and that the Defendant was capable and qualified to perform the work. The representations by the Defendant Bellagio were false, misleading, and deceptive in that the residence known as 2929 N. Augusta National Harlingen, Cameron County, Texas 78550 was not of good quality. The foregoing representations violate Section 17.46(b) of the Deceptive Trade Practices Consumer Protection Act ("DTPA") in that they constitute representations that goods have characteristics, uses, or benefits that they do not have; goods are of a particular standard, quality or grade when they are of another; goods are of a particular style or model when they are of another; and breach of express and implied warranties.

## X.

### Breach of Warranty

Plaintiff hereby incorporates by reference paragraphs VI through IX.

Defendant has also breached express and implied warranties given in connection with the construction of the home. Defendant gave an implied warranty of good and workmanlike construction and/or good and workmanlike performance of their services rendered in connection with the construction of the home. This implied warranty has been breached by each Defendant and the breach is a proximate cause of the damages to Plaintiff. Defendant has also made express warranties about the services provided in connection with the construction of the home, and even after the home was completed. Defendant has breached its express warranties, and the breaches have caused or have been the proximate cause of Plaintiffs' damages.

Defendant also provided systems, products, materials, equipment, and other tangible items to Plaintiff in connection with the construction of their home, Defendant provided express and implied warranties in connection with these goods, materials and tangible items, including the implied warranty of merchantability and implied warranty of fitness for a particular purpose. Defendant breached those warranties, and those breaches are a proximate cause of damages to Plaintiff.

At the time Plaintiff's residence was designed and constructed by Defendant, Bellagio Builders was a residential construction contractor and held itself out to the public as having knowledge or skill particular to that business. .

## XI.

### Unconscionable Conduct

Plaintiff hereby incorporates by reference paragraphs VI through X.

In the design and construction of Plaintiff's residence Defendant Bellagio engaged in an unconscionable action or course of action by designing and constructing a defective home which they knew or should have known would not be suitable for the purpose for which it was built. By such conduct, Defendant took advantage of the lack of knowledge, ability, experience, or capacity of the Plaintiff to a grossly unfair degree. The conduct of the Defendant resulted in a gross disparity between the value received and the consideration paid.

## XII.

## Fraud

Plaintiff hereby incorporate by reference paragraphs VI through XI.

Defendant made false representations to Plaintiff in connection with the construction of their home and services thereto. These false representations include Defendant's representations that it was qualified to perform as promised, complied with the agreement, that the home was properly constructed and was being properly constructed, the home was built in accordance with the plans and specifications and applicable building codes, that the home was built in accordance with State environmental and safety laws, that the Defendant was qualified to do work on the home, that Defendant's work would meet certain standards of quality and that Defendant's work would meet certain standards of quality, and that Defendant's work would be performed with professional skill and care. Defendant made these misrepresentations with knowledge of their falsity or made them recklessly without knowledge of the truth, and as a positive assertion. Defendant made these misrepresentations with the intention that they should be acted on by Plaintiff. Plaintiff acted in reliance on these misrepresentations. As a result, Defendant's misrepresentations and fraud have proximately caused damages to Plaintiff.

Additionally, Defendant concealed or failed to disclose material facts in its knowledge

regarding construction of their home as stated above. Defendant knew that Plaintiff was ignorant of these facts and that Defendant had superior knowledge with regard to the truth of the matters. Defendant intended to induce Plaintiff to hire Defendant for work on the home and to pay Defendant for their improper and defective work by concealing and failing to disclose these facts. Many of the deficiencies in the home were not discovered until some time after construction was finished. Therefore, Plaintiff pleads the discovery rule as it relates to all such damages. The injuries Plaintiff has suffered have been proximately caused by the misrepresentations and concealment of Defendant.

## XIII.

### Negligent Misrepresentation

In the alternative, the representations described above were made by Defendant in the course of their business or in a transaction in which they had a monetary interest. These representations supplied false information for Plaintiff's guidance in the construction of their home. Defendant did not exercise reasonable care or competence in obtaining or communicating the information. Defendant's negligent misrepresentations have caused damages to Plaintiff.

## XIV.

### Exemplary Damages

Plaintiff hereby incorporates by reference paragraphs VI through XIIII.

Defendant negligently constructed, supervised, selected and installed the home's foundation system in a manner that they knew or should have known would cause a risk of damage to the home and structural damage. Defendant had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety and

welfare of others, including Plaintiff.

The conduct of Defendant constitutes fraud.

The monetary savings that resulted from Defendant employing unsafe design and construction of the home instead of the safer alternative design, construction and installation, in part formed profits for the Defendant, which were used to the financial gain of those who made the decisions of financial gain to the Defendant and actual awareness of the real truth by the Defendant created a risk that the Defendant knew would result in health and safety risks and subsequent damages.

Plaintiff allege that the such conduct was authorized requested, commanded, performed, or recklessly tolerated by officers and agents of the Defendant, acting on behalf of the corporation and within the course and scope of their employment.

Defendant's conduct as described herein, constitute fraud, gross negligence and malice and entitles Plaintiff to recover exemplary damages in an amount in excess of the minimum jurisdictional limits of this Court.

Defendant's conduct was more than a momentary thoughtlessness or inadvertence. Rather, Defendant acted with a conscious indifference and/or reckless disregard for the rights of the Plaintiff. The conduct of the as described in this petition was committed knowingly; that is, Bellagio was actually aware of the falsity, deception, and unfairness of the conduct about which Plaintiff complains and was actually aware of the acts constituting the breach of warranties described herein above. Accordingly, Defendant is liable to Plaintiff for additional damages as provided by the DTPA.

The conduct of the Defendant as described in this petition was fraudulent or committed with malicious intent or committed with gross negligence.

Plaintiff's First Amended Original Petition

## XVI.

### Damages

Due to the actions and omissions of the Defendant, Plaintiff has suffered or will suffer serious and substantial damages including but not limited to the following:

1.  Past, present and future repair and reconstruction costs, in an amount not less than $275,000.00;

2.  Costs to retain professional architects and engineers, independent contractors for such work;

3.  Costs for past, present and future inspections of the home.

4.  Equipment replacement costs;

5.  Relocation costs and moving expenses;

6.  Mental Anguish;

7.  Attorneys' fees;

8.  All actual and consequential damages to be incurred in the future by Plaintiff herein;

9.  Prejudgment and Post-judgment interest at the maximum rates allowed by law.

10.  Exemplary or Punitive Damages, in an amount not less than $ 1,000,000.00.

As a result of the actions or omissions of the Defendant, Plaintiff has suffered damages in the maximum amount, including punitive damages and attorneys fees, of $2,000,000.00.

## XVII.

### Attorneys Fees

Defendant's conduct as described in this petition and the resulting damages to and loss by Plaintiff have necessitated Plaintiff retaining the attorneys whose names are subscribed to this

petition.   Plaintiff is therefore entitled to recover from Defendant an additional sum to compensate Plaintiff for a reasonable fee for such attorney services in the preparation and prosecution of this action, as well as a reasonable fee for any and all appeals of these counts.

### XVIII.

### Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Leo Araguz prays that the Defendant, be cited to appear and answer herein and that, after a trial by jury, Plaintiff have and recover judgment against the Defendant for the following:

1.    Actual and Consequential damages;

2.    Costs of temporary housing;

3.    Compensation for  reduction of market value due to the structural failure of home;

4.    Attorneys' fees;

5.    Pre-judgment and post-judgment interest at the highest rate allowed by law;

6.    Punitive or exemplary damages;

7.     Costs of suit; and

For such other and further relief to which Plaintiff may show himself justly entitled at law or in equity to receive.

Respectfully submitted,

THE GARCIA LAW FIRM, P.C.

By: _____

CINDY A. GARCIA
State Bar No. 07631710
201 North 1st Street
Harlingen, Texas 78550
Phone: 956/412-7055
Fax:   956/412-7105

LAW OFFICES OF PETER E. FERRARO

By: _____

Peter E. Ferraro
State Bar No. 06934600
201 N. 1st Street
Harlingen, Texas 78550
Tel: (956) 412-7055
Fax: (956) 412-7105



## GULF COAST CLAIMS SERVICE

11505 CHIMNEY ROCK RD.
HOUSTON, TEXAS 77035-2998
(713) 723-9434
FAX (713) 723-9817
NATIONWIDE FAX 1-800-CLAIMTX



March 3, 2003

Castle Home Builders, Inc.                    Certified Mail, RRR and
Bellagio Builders, Inc.                       regular mail
3009 North Augusta National Drive
Harlingen, TX 78550

| | | |
|---|---|---|
| Insured | : | Castle Home Builders, Inc. |
| Claimant | : | Leo Araguz |
| Policy No. | : | MNB3327015427 |
| D/L | : | 11/16/2001 |
| Our File | : | HO-20210668-MGS |

Dear Sirs:

St. Paul Reinsurance Company Limited ("St. Paul RE") and its counsel have reviewed the above referenced Policy, Plaintiff's Original Petition, and documentation surrounding the events leading up to the claim of Mr. Araguz with regard to coverage for the above referenced claim and, at this time, St. Paul Re will agree to provide a defense to you subject to this reservation of rights and St. Paul Re's right to withdraw and deny all further coverage and/or defense obligation based upon the reasons discussed in this letter in the event it becomes clear there is no coverage for Castle Home Builders, Inc. (hereinafter "Castle") under this Policy. This reservation of rights extends to St. Paul Re's investigation of the coverage issues and any defense and/or settlement negotiations, if any, with regard to this case on your behalf.

### Our Understanding of the Facts:

The insured in this case is Castle Home Builders, Inc. and/or Bellagio Builders, Inc. According to the General Liability Notice of Occurrence/Claim Form, notice of this claim occurred on November 16, 2001. We note that the Policy in question provides coverage from 6/1/2001 to 6/1/2002.

The homeowner, Leo Araguz, has complained about settlement cracks in the brick and sheet rock of the home completed in December of 2000 by Castle. The findings, pursuant to a visual inspection of the residence performed by Control Engineering Associates on December 10, 2001, were that there were stress and separation cracks in numerous areas in the walls and ceilings throughout the house, floors were uneven and sloping in the living room, kitchen, master bedroom and bathroom; there were cracks in the tile floor in the living areas, study and bathrooms; the door to the patio was sticking; and the window at the family room was cracked from pressure. In addition, the exterior





EXHIBIT
C

-2-

of the residence contained cracks and separation in the brick veneer at a number of locations. Foundation repair measures were anticipated as a result of "construction settlement" due to loose, wet or compressed soils being in the foundation pad prior to the concrete being placed. The inspector concluded, in addition to it being necessary to stabilize the foundation from further movement, that other cosmetic repairs would be necessitated to the interior of the house as set forth in the building estimate involving $9,364 in repairs, with final structural repairs to be in the neighborhood of $12,000 to $15,000, exclusive of any foundation repairs which are estimated to cost between $10,000 and $15,000. Although it is not precisely clear as to when the damages were first noted, it appears that the damages occurred after the operations of various subcontractors were completed.

The plaintiff has alleged damages of not less than $275,000 and is seeking punitive damages of not less than $1,000,000, which is in excess of your policy limits.

<u>Claims for Breach of Contract, Fraud, Warranty, Unconscionable Conduct and Violations of the Texas Deceptive Trade Practices Act Are Not Covered Under Your Policy.</u>

The above referenced claims are not covered under your policy because they do not satisfy the requirement that property damage be caused by an occurrence. An occurrence is defined in your policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Moreover, Exclusion 2a excludes coverage for property damage which is "expected or intended from the standpoint of the insured."

<u>Exclusion j. - Property Damage and Exclusion l. - Damage to Your Work Would not Apply to Exclude Coverage if the Damaged Work or the Work Out of Which the Damage Arose was Allegedly Performed on Bealf of Castle Home Entirely by Subcontractors:</u>

Although Exclusions "j" - "Damage to Property" and "l" - "Damage to your Work" appear to be applicable, these exclusions may or may not preclude coverage for this claim depending upon what control you retained over the work of the various subcontractors that performed the work for Mr. Araguz's home.

Preliminarily, the claims are for "property damage" which is defined in the policy to mean:

15. "Property damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All

-3-

3.  such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

4.

The claims in this scenario appear to involve only the physical injury to the tangible property which we understand occurred after the home was completed.

Under the exclusion section of the Policy, the following is stated with respect to damage to property.

2. Exclusions

This insurance does not apply to:

j.   Damage to Property

"Property damage" to:

(1)    Property you own, rent or occupy;

(2)    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3)    Property loaned to you;

(4)    Personal property in the care, custody or control of the insured;

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.

Exclusion 2.1., "Damage to Your Work", states the following:

"Property damage" to "your work" arising out of it or any part of it and included in the "Products-Completed Operations Hazard."

"This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

It is further our opinion that the "damage to your work" exception to the exclusion

-3-

would not apply to exclude coverage for the claims based on the fact that work was allegedly performed on your behalf entirely by subcontractors.

**There May Not be Coverage if Castle Home Builders Exercised Some Control Over the Work of its Subcontractors:**

A general contractor is responsible for the acts of a subcontractor only when the general contractor retains some control over the manner in which the subcontractor performs its work. Texas law appears clear that if the work constructing a house is performed exclusively by a subcontractor that you would have coverage for defects in that work. However, it is also our opinion that if Castle exercised any control over any of its subcontractors and their work caused or contributed to the damaged being claimed by Mr. Araguz that you would not have coverage for such damage because of Exclusion 2(j)(2) and/or (5) and/or (6).

**Designated Professional Services Exclusion:**

This Exclusion may bar coverage for any professional services that you rendered such as testing for soil conditions.

If you have any information which you believe would alter our opinion, please feel free to advise us and provide copies of such documentation to us.

Very truly yours,


Marilyn Stern,
Sr. Claims Adjuster
Gulf Coast Claims Services, Inc.
On Behalf of St. Paul Reinsurance
    Company, Ltd.